## POTTER v. STANDARD INV. CO.

### No. 13635.

Court of Civil Appeals of Texas. Dallas.
Oct. 5, 1945.

Rehearing Denied Nov. 2, 1945.

J. V. Fleming, of Tyler, for appellant.
H. B. Houston, of Dallas, for appellee.

YOUNG, Justice.

Standard Investment Company brought this suit against defendant Potter and one W. F. Woodard, comakers on a promissory note for $4,758.32. Mr. Potter having paid $2,500 on the note, the action was for recovery of unpaid balance, interest, and attorney's fees. Following jury trial, verdict, and plaintiff's judgment, Potter alone has undertaken an appeal.

Appellant had been surety on the fidelity bond of Woodard, and the note was given in settlement of collections that Woodard admittedly embezzled while handling certain notes belonging to Standard Investment Company. Defensively, Potter pled discovery, after making three payments on the note, that he was not liable on the prior bond, alleging (a) that he was induced to sign the note upon appellee's fraudulent representation of bond liability; (b) absence or failure of consideration, since his obligation on the bond was limited at most to automobile note collections, or a shortage of only $573.66; (c) the note was given upon express condition that an audit would be made and face amount thereof reduced or adjusted by certain credits; (d) that at all times appellee had been indebted to Woodard on a certain "reserve account", which indebtedness should have been applied to extinguish the note. Additionally, by cross action, appellant sought recovery of the $2,500 paid. In supplemental petition, plaintiff alleged waiver, estoppel, limitation; and, further, that the note was given not only in settlement of bond liability and embezzlement, but was in consideration of its continuing business with Woodard.

162

Jury findings, here summarized, were: (1) That the note in question was delivered in consideration of Potter's full release from all liability on the bond signed by himself and Woodard; (2) delivery of the note was not conditioned on a later audit of Woodard's account, the note principal to be changed accordingly; (3) Standard Investment Company, through its officer, Houston, did not represent, either expressly or impliedly to Tom Potter, on or before the date of said note, that the amount thereof ($4,758.32) related only to collections made by Woodard on notes covered by the fidelity bond, and which had not been remitted to plaintiff; (4) the note in suit was delivered by Woodard and Potter in consideration of plaintiff's continuing to purchase notes from Woodard; (5—substance of issues 11, 12, 13, 14) that at time the note was executed (June 17, 1940), and subsequently, when Potter made payments thereon ($1,000 September 27, $1,000 December 19, 1940, and $500 May 21, 1941), he knew, or by exercise of ordinary care could have known, that the items making up the total shortage of $4,758.32 contained notes other than those secured by chattel mortgages on automobiles. Appellant's motion for judgment non obstante was denied; also, his cross action for payments made.

No complaint is made of insufficiency of evidence to support above findings; appellant's obvious theory being that his points of appeal are sustainable as a matter of law. They are, in substance: (1) Failure of consideration in whole or in part of the note sued on; (2) aside from pleas of failure of consideration, the reserve fund held by appellee for account of Woodard was applicable as a credit upon any losses appellee may have sustained before recourse on Potter; (3) undisputably, the breach of fidelity involved notes that Woodard was to collect under an oral agreement not imposed by the contract between appellee and Woodard; hence, the losses thereby sustained were not covered by the bond executed by Potter as surety; (4) issues 11, 12, 13, 14 merely convicted appellant of negligence in failing to sooner discover the items constituting Woodard's shortage, and did not preclude the defense of failure of consideration and his recovery of the three payments made upon the note.

On June 9, 1939, appellee had entered into a contract with Woodard, the preamble thereto reciting: "Whereas, the Standard Investment Company, a corporation of Dallas, Texas, is desirous of purchasing automobile installment notes from W. F. Woodard, Kilgore, Texas"; the latter agreeing and guaranteeing that all notes sold to "Company" were to be first liens only; further agreeing to establish a reserve account with appellee for the satisfactory liquidation of all notes purchased. A fidelity bond was required by reason of the business contemplated under aforesaid contractual relations; which was furnished the Company some weeks later, signed by Woodard, with Potter as surety, reciting in part: "Whereas Standard Investment Company, a corporation, Dallas, Texas, hereinafter called the Company, has entered into a contract with W. F. Woodard, hereinafter called the Principal of Gregg County, Texas, under the date of 9th day of June 1939, wherein it is agreed that the Company shall purchase automobile installment notes with accompanying chattel mortgages from the Principal under various conditions as mentioned in the contract; and whereas the above mentioned contract is made a part of this instrument; and whereas the Company requires that the Principal furnish the Company with a bond against fraud, dishonesty, forgery, theft or embezzlement; * * *"; principal and surety therein binding themselves to indemnify "Company" in an amount not to exceed $5,000 " * * * against loss of money, securities, or personal property caused by fraud, dishonesty, forgery, theft or embezzlement by the Principal, committed in part, or alone, or in connivance with others, at any time or times during the duration of this bond, and this bond shall remain in force as long as there shall be an unliquidated balance due on any note or notes purchased from the Principal by the Company."

It will be noted that above bond does not purport to guarantee performance of the written contract, nor did such contract mention a bond or define any collection obligation for which a bond might be required. These deficiencies are explained by an oral agreement between appellee and Woodard, whereby all kinds of chattel mortgage paper were to be the subject of purchase, and collection thereof undertaken by Woodard; the bond to cover his faithful performance of the general business arrangement. In June, 1940, a check of Woodard's activities revealed a collection shortage of $5,088.32; which, being brought to attention of bond obligors, was settled, so far as liability of surety Potter

was concerned, by his execution of the note sued on. In the settlement transaction, above bond was canceled, a second bond executed, of date June 27, 1940, with sureties additional to Potter, it being understood that Woodard was to continue business with the Investment Company, inclusive of collections. The subsequent dealings with Woodard involved a further collection shortage, which losses appellee charged to (but were insufficiently recouped from) the "reserve account"; and no demand was ever made upon Mr. Potter under his second bond.

The balance of shortage in excess of appellant's note was paid by Woodard, it being stipulated that only $573.66 of the whole related to automobile notes. In this connection, the reference, both in contract and bond, to "automobile installment notes", inaccurately describes the business transacted thereunder. As already stated, chattel mortgage notes of all kinds were dealt with from the beginning, aggregating for the entire period some $90,000. Hence, it is without dispute that the word "automobile" appears in the writings by mistake.

■ Appellant primarily contends that he was not a party to the contemporaneous oral agreement which became the basis of Woodard's later shortage; that neither contract or bond purported to cover Woodard's fidelity as collecting agent, and any note given in settlement of a nonexistent bond liability was without consideration. Whether the bond, the declared purpose of which was to protect appellee against embezzlement by Woodard, comprehended the contract between the principals, both oral and written, or was limited merely to the written part which predicated no hazard of embezzlement, is an interesting question, but academic. The instant suit is not on the bond, but upon a note given in settlement thereof; and the particular defense is seen to have been disposed of adversely to appellant by the jury. Under issue 8 their finding was that appellee's agent, Houston, made no representations to Potter prior to execution of the note concerning his liability as surety on the earlier bond; and (issue 11) that, when the note was signed, Potter knew, or by the exercise of ordinary care could have known,

that the total shortage represented thereby included collections on notes other than those secured by chattel mortgages on automobiles.[1] From the residue of facts, therefore, it is apparent that the note was given at Woodard's request in settlement of admitted shortages in excess of the note; Woodard's indebtedness affording the consideration, even if there were no other. Van Wormer v. Gallier, Tex.Civ.App., 196 S.W. 307; Evans v. First National Bank of Waco, Tex.Civ.App., 101 S.W.2d 1080, writ refused.

■ The note was executed at Kilgore and mailed to appellee at Dallas, along with Woodard's list of the shortage items. The bond in question was also returned, and the fact that automobile note collections represented only about 7% of the deficit was not known until after these transactions were completed. But this later determination (source of shortages) cannot relate back and substitute for the uncertainty that existed at time the note was made. If the liability was doubtful or uncertain, by virtue of the terms of the bond or facts contemplated by the parties when the note issued, the extinguishment of all liability, whatever it was, furnished a sufficient consideration for its execution. Walker-Smith Co. v. Pouns, Tex.Civ.App., 256 S.W. 613.

■ Moreover, under jury finding No. 10, the note was delivered in consideration of appellee's continuance in business with Woodard, thus conclusively refuting all argument that the note was without consideration because of no liability on the bond.

■ It is further insisted that, even if liable on the note, the reserve fund held by appellee for account of Woodard was applicable as a credit upon any losses the Company may have sustained before recourse on appellant. Such contention overlooks the provisions of the contract between appellee and Woodard; also undisputed evidence relative to this reserve fund, its purpose and application. Under the contract (in which appellant had no interest), said reserve account was established to guarantee "satisfactory liquidation of the notes purchased" by appellee from dealer Woodard; in other words, to "back up" the latter's endorsement. Ap-

---

1 On cross-examination (S. F. 130), appellant testified that he understood the purpose of said bond; that it was not to guarantee payment of notes, but rather the fidelity of Woodard in the matter of collections; in other words, to "make good" embezzlements.

pellant testified to a knowledge of above purpose of the reserve fund when he signed the note; also of being informed that only on full liquidation of delinquent or unpaid notes, could he receive any benefit from such fund.

Aforesaid reserves were created by payment to appellee Company, on assignment by Woodard, of his commissions earned in sales of life insurance. On date of note the uncollected balance of commercial paper endorsed by Woodard totaled some $37,000, his reserve account to guarantee collection of these balances being around $2,300. As shown by a detail of the reserve account in evidence, and under all testimony, above amount of $2,300 became exhausted by proper charges in accordance with the contract; Woodard finally remaining indebted to appellee for a balance of more than $400; and none of the shortages represented by appellant's note were charged to the reserve account. No issues were requested as to the foregoing application of these reserves, and the trial court properly held that no credit therefrom was available to appellant.

All assignments of error, upon thorough study, are deemed without merit, necessitating an affirmance of the judgment under review.

Affirmed.